UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

THE COURTLAND COMPANY, INC.,
a West Virginia Business Corporation,

      Plaintiff,

v.                          Civil Action No. 2:21-cv-00101

UNION CARBIDE CORPORATION,
a New York Corporation,

      Defendant.

MEMORANDUM OPINION AND ORDER

Pending is the defendant's motion to dismiss the plaintiff's complaint, filed on April 9, 2021 (ECF No. 23).

I.   Background

The plaintiff initiated this action by filing a complaint on February 9, 2021.  See ECF No. 1.  The complaint alleges that the plaintiff owns a parcel of real property abutting Davis Creek in Kanawha County, West Virginia, and that the defendant owns two adjoining parcels of real property, both adjacent to the plaintiff's property.  See id. ¶¶ 8-9.  The first of the defendant's properties, referred to as the Filmont Site, lies roughly northeast of the plaintiff's property and also abuts Davis Creek, and the second, referred to as the UCC

Railyard, lies roughly east of the plaintiff's property.  See id. ¶¶ 9, 12-13, 18.

The plaintiff alleges that pollutants, at the Filmont Site and the UCC Railyard, discharge from seeps into two drainage ditches located at the northern and southern boundaries of the Filmont Site and then flow into nearby waters of the United States and West Virginia, namely, Davis Creek and its tributary, Ward Branch.  See id. ¶¶ 21-24, 28.  The plaintiff further alleges that the defendant has never had a required federal or state permit for the discharges.  See id. ¶¶ 9, 28, 58.  Aside from these seep-related discharges, the plaintiff also alleges that stormwater collected at the Filmont Site and the UCC Railyard is untreated and discharges directly or indirectly into Davis Creek.  See id. ¶ 62-64.  The plaintiff alleges that such discharges have been occurring continuously for over 30 years without a permit required by federal statute and regulation.  See id. ¶¶ 63-65, 69-70, 72.

Based on these allegations, the plaintiff asserts two counts against the defendant for citizen-suit relief pursuant to § 505 of the Water Pollution Prevention and Control Act ("Clean Water Act"), 33 U.S.C. § 1365.  Count I seeks relief based on the defendant's ongoing unpermitted discharges of pollutants from the Filmont Site into nearby navigable waters, and Count II

seeks relief based on the defendant's unpermitted stormwater discharges of pollutants from the Filmont Site and the UCC Railyard into nearby navigable waters.  See id. ¶¶ 48-74.

In its complaint, the plaintiff states that, on November 10, 2020, it sent pre-suit notice to the defendant and applicable state and federal officials and agencies, in compliance with 33 U.S.C. § 1365(b)(1).  See id. ¶ 5; ECF No. 1-1; see also 33 U.S.C. § 1365(b)(1)(A) ("No [citizen-suit] action may be commenced . . . under [§ 1365(a)(1)] . . . prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator [of the Environmental Protection Agency], (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator . . . .").  The plaintiff alleges that the required sixty-day period has elapsed since the notice was sent without any state or federal agency commencing an action in a court under § 1365(b)(1)(B).  See ECF No. 1 ¶ 6-7.

On February 10, 2021, the plaintiff filed an application for a temporary restraining order ("TRO").  See ECF No. 5.  In response, the defendant devoted much of its briefing to non-merits-based attacks on the plaintiff's application.  Specifically, the defendant argued that the plaintiff lacks standing to pursue its Clean Water Act claims; that the

3

plaintiff is prevented by the Clean Water Act's diligent-
prosecution bars from pursuing the claims in a citizen suit in
this court because of administrative proceedings pending before
the West Virginia Department of Environmental Protection
("WVDEP") and the Environmental Quality Board (the "Board");
that the claims are not ripe because of the administrative
proceedings; and that the plaintiff failed to provide sufficient
pre-suit notice before commencing the action.  See ECF No. 7 at
5-16.  The court held a three-day hearing on the TRO application
on February 26, March 1, and March 2, 2021.  See ECF No. 20; ECF
No. 21; ECF No. 22.

By an April 5, 2021 memorandum opinion and order, the
court denied the plaintiff's application for a TRO.  See ECF No.
32.  The court determined that the plaintiff failed to show that
it was likely to succeed on the merits.  See id. at 28.  In
reaching this determination, the court rejected the defendant's
argument that, due to the state administrative proceedings, the
plaintiff's claims are not ripe or are barred by the Clean Water
Act's diligent-prosecution bars.  See id. at 68-77.  However,
the court concluded that the plaintiff had failed to demonstrate
standing with respect to alleged discharges from the UCC
Railyard and from the Filmont Site into the northern drainage
ditch and Ward Branch and that its pre-suit notice was

4

insufficient with respect to stormwater discharges and seep-related discharges into the southern drainage ditch.  See id. at 28-67, 78.

On March 5, 2021, while the plaintiff's application for a TRO was still pending, the defendant filed the current motion to dismiss the plaintiff's complaint.  See ECF No. 23. As in its briefing on the application for a TRO, the defendant argues that the plaintiff lacks standing to pursue its Clean Water Act claims, that the claims are not ripe or are barred under the Clean Water Act's diligent-prosecution bars due to the state administrative proceedings, and that the plaintiff's pre-suit notice is insufficient.  See ECF No. 24 at 4-17; ECF No. 27 at 2-5.  Additionally, the defendant argues that the plaintiff's claims, which are based on ongoing Clean Water Act violations alleged to have commenced in 1990, see ECF No. 1 ¶¶ 28, 64; ECF No. 1-1 at 11, 13, are subject to a five-year statute of limitations, see ECF No. 24 at 17-19; ECF No. 27 at 5-7.   The motion has been fully briefed and is ready for disposition.

II.  Discussion

A.  Standing

The defendant first argues that the plaintiff lacks standing to bring its Clean Water Act claims.  Federal district courts are courts of limited subject-matter jurisdiction, possessing "only the jurisdiction authorized them by the United States Constitution and by federal statute."  United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2008).  As such, "there is no presumption that the court has jurisdiction." Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999).  Indeed, when the existence of subject matter jurisdiction is challenged, "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists."  Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); see also Richmond, Fredericksburg, & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

At the motion-to-dismiss stage, "[a] defendant may challenge subject-matter jurisdiction in one of two ways: facially or factually."  Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017) (citing Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)).  "In a facial challenge, the defendant contends 'that a complaint simply fails to allege facts upon

6

which subject matter jurisdiction can be based,'" and "the
plaintiff is 'afforded the same procedural protection as [it]
would receive under a [Fed. R. Civ. P.] 12(b)(6) consideration,'
wherein 'the facts alleged in the complaint are taken as true,'
and the defendant's challenge 'must be denied if the complaint
alleges sufficient facts to invoke subject matter
jurisdiction.'"   Id. (quoting Kerns, 585 F.3d at 192).[1]

        "The standing doctrine derives from 'the
Constitution's limitation on Article III courts' power to
adjudicate cases and controversies'" and thus "implicates the
court's subject matter jurisdiction."   South Carolina v. United
States, 912 F.3d 720, 726 (4th Cir. 2019) (quoting Frank Krasner
Enters. v. Montgomery Cty., 401 F.3d 230, 234 (4th Cir. 2005)).

_____

[1] Alternatively, a defendant may mount a "factual challenge," by
arguing "'that the jurisdictional allegations of the complaint
are not true.'"   Beck, 848 F.3d at 270 (brackets omitted)
(quoting Kerns, 585 F.3d at 192).  In a factual challenge,
"[u]nless 'the jurisdictional facts are intertwined with the
facts central to the merits of the [case],'   United States ex
rel. Vuyyuru v. Jadhav, 555 F.3d 337, 348 (4th Cir. 2009)
(quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)),
the court has "the discretion to 'go beyond the allegations of
the complaint and in an evidentiary hearing determine if there
are facts to support the jurisdictional allegations,'"  Beck, 848
F.3d at 270 (quoting Kerns, 585 F.3d at 192).  "In that
situation, the presumption of truthfulness normally accorded a
complaint's allegations does not apply, and the district court
is entitled to decide disputed issues of fact with respect to
subject matter jurisdiction."   Kerns, 585 F.3d at 192.  The
court does not understand the defendant to be raising a factual
challenge to the complaint's jurisdictional allegations.

"To establish Article III standing, 'a plaintiff must show (1) it has suffered an injury in fact . . . ; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" <u>Id.</u> (quoting <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 180-81 (2000)).[2]

The defendant argues that the plaintiff has not sufficiently alleged a cognizable injury to its property or business interests. However, the complaint alleges contaminants that are discharged from the defendant's properties are being deposited onto the plaintiff's property. <u>See</u> ECF No. 1 ¶¶ 23-24. As the court noted in the TRO proceedings, the depositing of contaminants onto the plaintiff's property itself constitutes a sufficiently concrete and particularized injury, and there is no requirement that the plaintiff allege some sort of additional business or impedimentary harm to establish an injury for Clean

---

[2] "The Clean Water Act confers standing on 'any person or persons having an interest which is or may be adversely affected.'" <u>Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.</u>, 629 F.3d 387, 396 (4th Cir. 2011) (quoting 33 U.S.C. § 1365(a), (g)). "Thus, so long as a citizen plaintiff satisfies the constitutional standing requirements, there is standing to bring a suit under the Clean Water Act." <u>Ohio Valley Envtl. Coal., Inc. v. Maple Coal Co.</u>, 808 F. Supp. 2d 868, 879 (S.D.W. Va. 2011) (citing <u>Gaston Copper Recycling</u>, 629 F.3d at 396).

Water Act standing.  See ECF No. 32 at 33 n.16 (citing, inter alia, Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 154 (4th Cir. 2000) (en banc)).

The defendant also seems to argue that the court should not credit the complaint's allegations that contaminants from the defendant's properties are being deposited onto the plaintiff's property.  The defendant's argument in this regard chiefly concerns contaminants alleged to be discharging from the Filmont Site into Ward Branch and the northern drainage ditch. The complaint alleges that these contaminants flow into Davis Creek and are then deposited on the plaintiff's property when, at certain times, Davis Creek flows southward, toward the plaintiff's property, instead of maintaining its normal flow northward, away from the plaintiff's property.  See ECF No. 1 ¶ 24.  The defendant argues the allegations that contaminants are travelling upstream in Davis Creek to reach the plaintiff's property should not be believed.  For this reason, the defendant argues, the plaintiff has failed to adequately allege that it has been injured by contaminants being discharged into Ward Creek and the northern drainage ditch and then deposited on its property, that any injury to the plaintiff's property caused by contaminants is fairly traceable to such discharges, or that

abatement of such discharges would remedy the injury to the plaintiff's property.[3]

The court is not persuaded by the defendant's argument.  For one thing, the defendant entirely ignores the complaint's allegations that contaminants discharged from the Filmont Site and the UCC Railyard into the southern drainage ditch are deposited onto the plaintiff's property where the ditch, which flows <u>downstream</u> from the defendant's properties, traverses the plaintiff's property.  <u>See</u> ECF No. 1 ¶ 23. Further, in assessing a facial challenge to the complaint, like the one brought by the defendant, the court is obligated to accept its well-pled factual allegations – including allegations that Davis Creek sometimes reverses its normal northward flow and instead flows southward – as true.  <u>See</u> <u>Beck</u>, 848 F.3d at 270.

_____

[3] The defendant also advances the rather curious argument that the plaintiff has failed to demonstrate standing because it has not alleged that the defendant controls the flow of Davis Creek to cause contaminants to travel upstream to the plaintiff's property.  The mere fact that a defendant does not control the flow of a waterway cannot defeat standing for a plaintiff alleging that the defendant discharged into the waterway contaminants that later reached the plaintiff's property.  If the plaintiff's property were downstream of the alleged discharges, the defendant could hardly contest traceability merely because it is not responsible for causing water to flow downstream.  Likewise, the defendant cannot contest traceability merely because it is not responsible for causing Davis Creek to backflow at certain times.

In sum, the plaintiff has sufficiently alleged that it has been injured by contaminants from the defendant's properties being deposited on its property; that the injury is fairly traceable to discharges of contaminants from the defendant's properties into the southern drainage ditch, which deposits the contaminants on the plaintiff's property where the ditch traverses it, and into Ward Branch and the northern drainage ditch, which carry the contaminants to Davis Creek, which in turn deposits them on the plaintiff's property when, at certain times, its reverses flow; and that the injury would be redressed by an order enjoining or abating the discharges.  These allegations are thus sufficient to withstand the defendant's facial challenge to the plaintiff's standing.[4]

---

[4] In the TRO proceedings, the court concluded that the plaintiff had failed to clearly show it had standing to bring its Clean Water Act claims insofar as the claims relate to the UCC Railyard and to discharges from the Filmont Site into Ward Branch and the northern drainage ditch.  See ECF No. 32 at 53. The different result reached in this memorandum opinion and order is attributable to the standard for showing standing applicable in a TRO proceeding, which, the court determined, required the plaintiff to clearly demonstrate the elements of standing with evidence.  See id. at 27-32; see also Beck, 848 F.3d at 270 ("[T]he procedural posture of the case dictates the plaintiff's burden as to standing.").

B.   <u>Pre-suit notice</u>

        The defendant next argues that the action should be dismissed because the plaintiff failed to provide sufficient pre-suit notice of its Clean Water Act claims.  As the court explained in a related case,

>        The Clean Water Act prohibits the discharge of pollutants into navigable waters of the United States without a permit.  33 U.S.C. § 1251 <u>et seq.</u>  Section 505(b) of the Clean Water Act, <u>id.</u> § 1365(b), provides for "citizen suits" to enforce provisions of the Act.  "[A]ny citizen may commence a civil action on his own behalf" against any person.  <u>Id.</u> § 1365(a)(1).  No citizen suit under § 1365(a)(1) may commence "prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator [of the Environmental Protection Agency], (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator."  <u>See id.</u> § 1365(b)(1)(A).  The requirements concerning the contents of such notice are governed by 40 C.F.R. § 135.3(a).
>
>        . . . .
>
>        Compliance with the notice requirement of 40 C.F.R. § 135.3(a) "is a mandatory condition precedent to filing suit under the Clean Water Act."  <u>Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.</u>, 629 F.3d 387, 400 (4th Cir. 2011).  Notice regarding an alleged violation of the Clean Water Act "shall include sufficient information to permit the recipient to identify" the following information: (1) the specific standard, limitation, or order alleged to have been violated; (2) the activity alleged to constitute a violation; (3) the person or persons responsible for the alleged violation; (4) the location of the alleged violation; (5) the date or dates of such violation; and (6) the full name, address, and telephone number of the person giving notice.  40 C.F.R. § 135.3(a).  "The requirement of adequate notice does not mandate that citizen

> plaintiffs list every specific aspect or detail of
> every alleged violation," but notice "must provide the
> alleged violator with enough information to attempt to
> correct the violation and avert the citizen suit."
> Friends of the Earth, 629 F.3d at 400 (internal
> quotation marks omitted) (quoting Pub. Interest
> Research Group of N.J., Inc. v. Hercules, Inc., 50
> F.3d 1239, 1248 (3d Cir. 1995)).  A plaintiff's lack
> of information cannot excuse deficiencies in a notice.
> Id. at 402.

Courtland Co., Inc. v. Union Carbide Co., No. 2:19-cv-00894,
2020 WL 6265080, at *2, 4 (S.D.W. Va. Oct. 23, 2020).

In the TRO proceedings, the court determined that,
although "the plaintiff provided sufficient pre-suit notice
regarding the discharges associated with Ward Branch and the
northern drainage ditch," it failed to "satisf[y] the pre-suit
notice requirement with respect to discharges associated with
the southern drainage ditch."  ECF No. 32 at 62.  Further, the
court determined that the plaintiff failed to "satisf[y] the
pre-suit notice requirement with respect to stormwater
discharges."   Id. at 67.

For the reasons set forth in its memorandum opinion
and order denying the plaintiff's TRO application, the court
concludes that, although the plaintiff's pre-suit notice is
sufficient with respect to the discharges from the Filmont Site
into Ward Branch and the northern drainage ditch, they are
insufficient with respect to stormwater discharges and

13

discharges associated with the southern drainage ditch.  See id. at 53-67.  Accordingly, the complaint's Clean Water Act claims are dismissed to the extent they concern stormwater discharges and discharges associated with the southern drainage ditch.  See Gaston Copper Recycling, 629 F.3d at 399-400.

C.    Diligent prosecution bars and ripeness.

The defendant next argues that administrative proceedings currently pending before state environmental agencies warrants dismissal of the action.  As the court explained in the TRO proceedings:

> [O]n or about October 28, 2020, the WVDEP issued a notice of violation of the West Virginia Water Pollution Control Act to the defendant after . . . conducting its own site visit to the Filmont Site. The notice states that an inspection of the Filmont Site revealed that the defendant [is] . . . in violation of W. Va. Code § 22-11-8(b)(1) . . . .
>
> On December 8, 2020, the Director of WVDEP's Division of Water and Waste Management issued a unilateral order . . . [directing] the defendant to[, among other things,] within 30 days, either cease the discharge of industrial waste into waters of the State or electronically submit an administratively complete application for a[n applicable] permit . . . .
>
> On January 7, 2021, the defendant filed an appeal of the Director's . . . unilateral order to the [Board] . . . [and] a motion to stay the . . . order pending resolution of the appeal. . . .  [T]he Board . . . stayed the Director's order . . . [and] set an evidentiary hearing regarding the defendant's appeal for May 13 and 14, 2021 . . . .

14

ECF No. 32 at 16-19 (internal citations, quotation marks, and brackets omitted).

The defendant argues that, in light of these pending administrative proceedings, the plaintiff is barred from bringing its Clean Water Act claims pursuant to the diligent prosecution bars to citizen suits found in 33 U.S.C. §§ 1319(g)(6)(A)(ii) and 1365(b)(1)(B).  The defendant further argues that the administrative proceedings before the Board and the WVDEP render the plaintiff's claims "susceptible to considerations of ripeness."  ECF No. 24 at 14.

The court rejected the defendant's arguments for application of the diligent-prosecution bars and the ripeness doctrine in the TRO proceedings.  <u>See</u> ECF No. 32 at 68-78.  For the same reasons expressed in the TRO proceedings, the court concludes that the defendant's arguments for dismissing the action based on the diligent-prosecution bars and the ripeness doctrine are misguided.

D.    <u>Statute of limitations</u>

Lastly, the defendant argues that the plaintiff's Clean Water Act claims are barred by the five-year statute of limitations set forth in 28 U.S.C. § 2462, which provides in relevant part:

15

> Except as otherwise provided by Act of Congress, an
> action, suit or proceeding for the enforcement of any
> civil fine, penalty, or forfeiture, pecuniary or
> otherwise, shall not be entertained unless commenced
> within five years from the date when the claim first
> accrued . . . .

28 U.S.C. § 2462.[5]  The defendant points out that both the

complaint and the plaintiff's pre-suit notice allege that the

discharges on which the Clean Water Act claims are based

commenced no later than 1990 and thus that the defendant's

alleged violations occurred decades ago, long before the five-

year period provided by § 2462.  ECF No. 1 ¶ 28; ECF No. 1-1 at

10-11, 13.

    The plaintiff responds that the defendant's argument

fails because its complaint alleges that the discharges are

ongoing and continuing, which precludes application of the

statute of limitations.  See ECF No. 26 at 11-12; see also ECF

---

[5] The plaintiff does not dispute that § 2462 sets forth the
applicable limitations period for its Clean Water Act claims.
The court further notes that other courts have applied § 2462 to
citizen-suit Clean Water Act claims.  See Pub. Interest Research
Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc., 913 F.2d
64, 73-76 (3d Cir. 1990); see also United States v. Hobbs, 736
F. Supp. 1406, 1408 n.5 (E.D. Va. 1990) (collecting cases).

    Although the parties do not address the issue, it is
uncertain whether § 2462 would operate to bar a Clean Water Act
claim to the extent a citizen plaintiff seeks injunctive relief
beyond a civil penalty.  See generally S.E.C. v. Marin, 982 F.3d
1341, 1355 (11th Cir. 2020).  However, because the court
determines for other reasons that § 2462 does not bar the
plaintiff's claims at this stage, it declines to further
consider the issue.

No. 1 ¶ 28; ECF No. 1-1 at 10-11, 13.  The plaintiff further points out that it first discovered the existence of the discharges alleged in the complaint in 2019 during discovery in a related case.  See ECF No. 26 at 12; see also ECF No. 1 ¶ 19. The plaintiff also briefly argues that the defendant concealed the discharges, preventing the plaintiff from discovering them earlier.  See ECF No. 26 at 12.

"A defendant's claim that an action is time-barred is an affirmative defense that it can raise in a motion to dismiss when the 'face of the complaint includes all necessary facts for the defense to prevail.'"  Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp., 855 F.3d 573 (4th Cir. 2017) (quoting Leichling v. Honeywell Int'l, Inc., 842 F.3d 848, 850–51 (4th Cir. 2016)).  Because ultimate resolution of a statute-of-limitations defense often requires consideration of evidence beyond the face of the complaint, dismissal based on a time bar at the motion-to-dismiss stage is rare.  See Hengle v. Asner, 433 F. Supp. 3d 825, 891 (E.D. Va. 2020).  When faced with a defendant's motion to dismiss on the ground that the complaint's claims are time-barred, the court must accept the complaint's well-pled allegations as true.  See id.

For purposes of § 2462, a claim accrues, and the five-year period begins to run, when the plaintiff has a complete and

present cause of action – often (but not always) upon the occurrence of the underlying violation. See Gabelli v. S.E.C., 568 U.S. 442, 448 (2013); Fed. Energy Reg. Comm'n v. Powhatan Energy Fund, LLC, 949 F.3d 891, 898 (4th Cir. 2020). However, under the continuing-violation doctrine, a claim does not completely accrue for purposes of the § 2462 limitations period while the violative conduct remains continuous and ongoing. See United States v. Spectrum Brands, Inc., 924 F.3d 337, 354-55 (7th Cir. 2019); Interamericas Invs., Ltd. v. Bd. of Govs. of Fed. Reserve Sys., 111 F.3d 376, 382 (5th Cir. 1997); Congaree Riverkeeper, Inc. v. Carolina Water Serv., Inc., 248 F. Supp. 3d 733, 745-46 (D.S.C. 2017); United States v. Lowry, 409 F. Supp. 2d 732, 736-38, 741 (W.D. Va. 2006); United States v. Westvaco Corp., 144 F. Supp. 2d 438, 442 (D. Md. 2001).[6]

    The Fourth Circuit does not appear to have applied the continuing-violation doctrine in the context of an environmental statute like the Clean Water Act. Courts that have done so

---

[6] But see Sierra Club v. Okla. Gas & Elec. Co., 816 F.3d 666, 671-75 (10th Cir. 2016) (holding that, because § 2462's time bar applies five years from the date when the claim "first accrued," the five-year period begins to run when the violative conduct has occurred and would support a cause of action, even if the violation continued occurring until some later date (emphasis in original) (quoting 28 U.S.C. § 2462)). Notably, the defendant does not appear to argue that the continuing-violation doctrine is inapplicable to the limitations period set by § 2462.

assess whether the alleged violation is occasioned by continual unlawful acts rather than continual ill effects stemming from an initial unlawful act.  See Westvaco Corp., 144 F. Supp. 2d at 442 (citing Nat'l Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1166 (4th Cir. 1991)); see also Nat'l Parks & Conservation Ass'n, Inc. v. Tenn. Valley Auth., 502 F.3d 1316, 1322 (11th Cir. 2007) ("In determining whether to characterize a violation as 'continuing,' it is important to distinguish between the present consequences of a one-time violation, which do not extend the limitations period, and a continuation of a violation into the present, which does." (internal quotation marks omitted)).

Additionally, at least one court has relied on the Supreme Court's decision in Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49 (1987), which held that, for purposes of bringing a Clean Water Act claim, a citizen plaintiff cannot rely on "wholly past violations" but must instead allege and prove a "continuous or intermittent violation."  484 U.S. at 52, 57, 64; see also Congaree Riverkeeper, 248 F. Supp. 3d at 745-46.  To meet this requirement, a citizen plaintiff may allege and prove either "violations that continue on or after the date the complaint is filed" or "a continuing likelihood of a recurrence in

intermittent or sporadic violations." <u>Chesapeake Bay Found.,
Inc. v. Gwaltney of Smithfield, Ltd.</u>, 844 F.2d 170, 171-72 (4th
Cir. 1988).  Although the Supreme Court's "continuous or
intermittent violation" requirement did not arise in the context
of a limitations issue, it has been employed by one court in
this circuit in determining whether a complaint sufficiently
alleged a continuous violation to overcome § 2462's time bar.
<u>See</u> <u>Congaree Riverkeeper</u>, 248 F. Supp. 3d at 745-46.

        The plaintiff argues that its complaint sufficiently
alleges a continuous violation for purposes of the limitations
period because it satisfies the "continuous or intermittent
violation" test from <u>Gwaltney</u>.  <u>See</u> ECF No. 26 at 11-12.  The
defendant does not seem to dispute that the plaintiff's
complaint satisfies this test but instead argues that the
<u>Gwaltney</u> test is simply not applicable for purposes of the
limitations period.  <u>See</u> ECF No. 27 at 5-6.

        The court need not conclusively determine at this
stage whether the <u>Gwaltney</u> test applies to the continuing-
violation doctrine in the limitations context.  Assuming the
<u>Gwaltney</u> test does apply, there is no dispute that the
plaintiff's complaint satisfies it, and the court has no trouble
concluding that the complaint sufficiently alleges both that the
violative discharges continue after the date the complaint was

filed and that there is a continuing likelihood of a recurrence in intermittent or sporadic unpermitted discharges.  <u>See</u> <u>Chesapeake Bay Found.</u>, 844 F.2d at 171-72.  And, even assuming the <u>Gwaltney</u> test does not apply, the court concludes that the complaint satisfies the alternative continuing-violation test because the alleged Clean Water violations are occasioned by continual unpermitted discharges rather than the ill effects from an initial discharge or other violative conduct that occurred in 1990.  <u>See</u> <u>Nat'l Parks & Conservation Ass'n</u>, 502 F.3d at 1322; <u>Nat'l Advert. Co.</u>, 947 F.2d at 1166; <u>Westvaco</u> <u>Corp.</u>, 144 F. Supp. 2d at 442.  Thus, accepting the complaint's factual allegations, the court concludes that the plaintiff has alleged continuous and ongoing violations and that, at this stage, the defendant has not shown that the Clean Water Act claims are time-barred under § 2462.[7]

### III. Conclusion

For the foregoing reasons it is ORDERED that the defendant's motion to dismiss (ECF No. 23) be, and hereby it is, granted insofar as is seeks dismissal of the plaintiff's claims

---

[7] The court declines to address the plaintiff's other arguments regarding application of the discovery rule and the fraudulent concealment doctrine to the § 2462 limitations period in the context of Clean Water Act citizen-suit claims.

to the extent they concern stormwater discharges and discharges associated with the southern drainage ditch, and denied in all other respects.  It is further ORDERED that the plaintiff's complaint be, and hereby it is, dismissed to the extent the claims therein concern stormwater discharges and discharges associated with the southern drainage ditch.

The Clerk is directed to transmit copies of this memorandum opinion and order to counsel of record and any unrepresented parties.

ENTER: May 13, 2021

John T. Copenhaver, Jr.
Senior United States District Judge