```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

THE COURTLAND COMPANY, INC., a
West Virginia Business Corporation,

    Plaintiff,

v.                                   Civil Action No. 2:19-cv-00894
                                    Civil Action No. 2:21-cv-00101
                                    Civil Action No. 2:21-cv-00487

UNION CARBIDE CORPORATION, a
New York Corporation,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff The Courtland Company, Inc.'s ("Courtland") Emergency Motion Pursuant to the All Writs Act (ECF Nos. 308, 82, 11), filed November 2, 2021. On November 9, 2021, Defendant Union Carbide Corporation ("UCC") responded (ECF Nos. 313, 88, 16) in opposition, to which Courtland replied (ECF Nos. 315, 92, 19) on November 16, 2021.

### I.  Background

The parties are corporations owning parcels of real property near Davis Creek in Kanawha County, West Virginia. The properties owned by UCC -- the Filmont Landfill and Massey Railyard -- are located adjacent to Courtland's property.

Beginning in 2019, UCC's properties became the subject of a series of "citizen suits" instituted by Courtland pursuant to the Clean Water Act ("CWA") and the Resource Conservation and Recovery Act ("RCRA").[1] Courtland alleges in these actions that UCC has utilized its properties to store hazardous and toxic materials, which have released into the nearby environment, including Courtland's property. The litigation remains ongoing.

In February 2021, UCC applied to enter the Filmont Landfill and Massey Railyard (collectively "the site") into the WVDEP's Voluntary Remediation Program ("VRP"). On September 23, 2021, the site was formally accepted into the VRP. <u>See</u> ECF 308-2. On October 22, 2021, Courtland sent a correspondence to the WVDEP urging that the acceptance be rescinded within ten (10) days or Courtland would take legal action.[2] <u>See</u> ECF 308-4. The WVDEP did not rescind its acceptance of the site into the VRP, and Courtland filed the instant motion on November 2, 2021.

In its motion, Courtland requests that the court issue an order under the All Writs Act (1) directing UCC to withdraw its "improper and illegal application" to the VRP, and (2)

---

[1] Courtland has also brought cost-recovery claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and various state law claims.

[2] The bulk of this correspondence is nearly identical to Courtland's memorandum in support of the instant motion.

prohibiting the WVDEP, during the pendency of this litigation, from issuing any administrative order affecting or concerning the site. Reduced to its essence, Courtland's primary contention is that the site's acceptance into the WVDEP's VRP impermissibly interferes with the court's jurisdiction over Courtland's pending citizen suits under the CWA and RCRA.

UCC responds that Courtland's requested relief is not necessary or appropriate in aid of the court's jurisdiction inasmuch as "the WVDEP's acceptance of [the site] into the VRP is not a formal administrative proceeding and is not at odds with this [c]ourt's exercise of federal jurisdiction" over its RCRA and CWA claims or its state law gross negligence claim. ECF 16 at 9. UCC avers that the WVDEP's VRP is a voluntary program, encouraging cleanup and redevelopment of contaminated properties and not an enforcement action or a formal administrative hearing where facts and law are be adjudicated or relitigated. UCC further contends that "Courtland's requested relief will functionally strip [the] WVDEP's ability under the VRP to supervise and oversee environmental investigation and remediation efforts at [the site]." Id. at 10.

## II. Governing Standard

The All Writs Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act permits federal courts to "'issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" In re Am. Honda Motor Co., Inc., 315 F.3d 417, 437 (4th Cir. 2003) (quoting Pennsylvania Bureau of Corr. v. United States Marshal Serv., 474 U.S. 34, 40 (1985)). "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." United States v. New York Tel. Co., 434 U.S. 159, 174 (1977).

## III. Discussion

Courtland first contends that the WVDEP's acceptance of the site into the VRP "improperly and impermissibly interferes" with the court's jurisdiction of its citizen suits

4

under the CWA and RCRA. ECF 12 at 8. Courtland avers that inasmuch as the WVDEP received the congressionally required pre-suit notices under both the CWA and RCRA and declined to commence a governmental enforcement action, it failed to assume its enforcement role, permitting Courtland's citizen suits to proceed, thereby invoking the court's jurisdiction. Courtland thus contends that by making the conscious decision to take no action in this litigation but later accepting UCC's application to the VRP for its Filmont site, the WVDEP has "acted under color of state law to impede the Congressionally-granted federal jurisdiction of this [c]ourt with respect to the matters at issue in Courtland's pending" citizen suits. ECF 12 at 8. The court is unpersuaded by this contention.

Both the CWA and RCRA require pre-suit notice of the alleged claims to be sent to the Administrator, the state in which the alleged violations occurred, and to any individual or entity alleged to be in violation thereof before the plaintiff can properly commence a citizen suit. See 33 U.S.C. § 1365(b)(1)(A); 42 U.S.C. § 6972(b)(2)(A). "Congress implemented the notice requirement[s] to allow government agencies, in the first instance, to enforce the relevant regulations, and to allow the alleged violator, if it wishes, to take appropriate steps toward compliance before being sued." Midshore v.

Riverkeeper Conservancy, Inc. v. Franzoni, 429 F. Supp. 3d 67, 74 (D.Md. 2019) (citing Hallstrom v. Tillamook County, 493 U.S. 20, 29 (1989)). "Therefore, 'citizen suits are proper only if Federal, State, and local agencies fail to exercise their enforcement responsibilities.'" Ohio Valley Environmental Coalition, Inc. v. Hobet Min., LLC, 723 F. Supp. 2d 886, 903 (S.D. W.Va. 2010) (quoting Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., 484 U.S. 49, 60 (1987)).

Courtland is thus correct that the court assumed jurisdiction over its citizen suits in the absence of action taken by the relevant enforcement agencies after expiration of the notice periods. But the mere fact that the WVDEP elected not to pursue an enforcement action at the outset of this litigation is of little relevance respecting the issue at hand. The acceptance of the site into the WVDEP's VRP is not an enforcement action, nor does the court see how its jurisdiction over Courtland's claims is somehow usurped by UCC's participation in the VRP. To the extent that Courtland avers it is left without a viable remedy in these actions if UCC is permitted to participate in the VRP, such is not the case. While a defendant's post-suit cessation of the alleged violation

has the ability to moot claims for injunctive relief,[3] the same does not moot citizen-suit claims for civil penalties. See Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 174 (2000) (concluding "[civil] penalties may serve, as an alternative to an injunction, to deter future violations and thereby redress the injuries that prompted a citizen suitor to commence litigation."); see also Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc., 897 F.2d 1128, 1135 (11th Cir. 1990) (concluding "[i]f, after the complaint is filed, the defendant comes into compliance with the [CWA], then traditional principles of mootness will prevent maintenance of the suit for injunctive relief as long as there is no reasonable likelihood that the wrongful behavior will recur" but "the mooting of injunctive relief will not moot the request for civil penalties so long as such penalties were rightfully sought at the time the suit was filed.").

---

[3] It is worth noting that "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the alleged wrongful behavior could not reasonably be expected to recur." Laidlaw, 528 U.S. at 190. This stringent standard operates to "protect[] plaintiffs from defendants who seek to evade sanction by predictable 'protestations of repentance and reform.'" Gwaltney, 484 U.S. at 67.

Courtland also avers that by accepting UCC's application for the site into the VRP, the WVDEP is presumptively deciding questions pending before the court regarding UCC's alleged gross negligence and whether the site constitutes an "open dump" under RCRA and state law.  As to the gross negligence issue, Courtland contends that pursuant to the WVDEP's eligibility criteria for the VRP, a site is ineligible for participation in the program where the release subject to the remediation was created through the applicant's gross negligence or willful misconduct.  Inasmuch as Courtland has alleged a gross negligence claim against UCC, it avers "it is highly inappropriate for the WVDEP, without the benefit of the [c]ourt's judgment on the matter" to presumptively resolve the gross negligence issue by accepting the site into the VRP.  ECF 12 at 19.

Courtland similarly asserts that the WVDEP is unable to consider or approve a remedial action for the site without first addressing whether the site is an open dump -- an issue that the parties dispute in these actions -- given the mandatory abatement requirements for open dumps under federal and state law.  Courtland thus asserts the enrollment of the site into the WVDEP's VRP is an "end-run" on the court's jurisdiction.

The court has not yet decided the gross negligence and "open dump" disputes, nor is it in any position at this juncture to make findings of fact respecting the same. Additionally, the WVDEP's acceptance of the site into its VRP does not prevent the court from making such determinations at the appropriate time. Courtland has provided no authority wherein a court, pursuant to the All Writs Act, has enjoined a defendant's participation in a state's voluntary remediation program in efforts to remediate the very contamination the citizen suits seek to abate. The court declines to issue such a decision here inasmuch as Courtland's requested relief is neither necessary nor appropriate in aid of the court's jurisdiction over these matters.[4]

---

[4] The court recognizes that some courts, in deciding whether to grant injunctive relief under the All Writs Act, have applied the standard articulated in Wisconsin Right to Life, Inc. v. Fed. Election Comm'n, stating that the Act should be applied "sparingly and only in the most critical and exigent of circumstances." 542 U.S. 1305, 1306 (2004); see, e.g., United States v. Purdue Frederick Co., 963 F. Supp. 2d 561, 566 (W.D. Va. 2013) (noting the Act should generally "only be used 'sparingly and only in the most critical and exigent of circumstances.'"). Some courts, however, have declined to apply the Wisconsin Right to Life standard by highlighting the narrow circumstance in which it was applied. See, e.g., In re Stabile, 436 F. Supp. 2d 406, 416 (E.D.N.Y. 2006) (explaining that the Wisconsin Right to Life standard was articulated by "Chief Justice Rehnquist, sitting alone in his capacity as a Circuit Justice, [wherein he] declined to issue an injunction [under the All Writs Act] pending appeal barring the enforcement of an Act of Congress[.]'"). Such debate is of little moment here given that regardless of whether the more stringent Wisconsin Right to

IV.  Conclusion

Based on the foregoing discussion, Courtland's motion (ECF Nos. 308, 82, 11) is DENIED.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: November 23, 2021

_____
John T. Copenhaver, Jr.
Senior United States District Judge

---

Life standard is applied, Courtland is unable to demonstrate that its requested relief is "necessary or appropriate in aid of" the court's jurisdiction as required under 28 U.S.C. § 1651(a).

10