```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

**THE COURTLAND COMPANY, INC.,**

      Plaintiff,

v.                                      Civil Action No. 2:19-cv-00894
                                         Civil Action No. 2:21-cv-00101
                                         Civil Action No. 2:21-cv-00487

**UNION CARBIDE CORPORATION,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

Pending are (1) Plaintiff The Courtland Company, Inc.'s ("Courtland") Motion for Reconsideration of This Court's Denial of Plaintiff's Motion for Injunctive Relief Pursuant to the All Writs Act (ECF Nos. 321, 101, 24), filed December 23, 2021, and (2) Union Carbide Corporation's ("UCC") Motion for Rule 11 Sanctions (ECF Nos. 327, 109, 29), filed February 7, 2022.

### I. Background

The parties are corporations owning parcels of real property near Davis Creek in Kanawha County, West Virginia. The relevant properties in these three actions owned by UCC -- the Filmont Landfill and Massey Railyard -- are located adjacent to

Courtland's property. Beginning in 2019, these properties became the subject of a series of "citizen suits" instituted by Courtland pursuant to the Clean Water Act ("CWA"), the Resource Conservation and Recovery Act ("RCRA"), and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").[1] Courtland alleges in these actions that UCC has utilized its properties to store hazardous and toxic materials, which have released into the nearby waterways and environment, including onto Courtland's property. The litigation remains ongoing.

In February 2021, UCC applied to enter the Filmont Landfill and Massey Railyard (collectively "the site") into the Voluntary Remediation Program ("VRP") of the West Virginia Department of Environmental Protection ("WVDEP"). On September 23, 2021, the site was formally accepted into the VRP. See ECF 308-2. On October 22, 2021, Courtland sent a correspondence to the WVDEP urging that the acceptance be rescinded within ten (10) days or Courtland would take legal action. See ECF 308-4. The WVDEP did not rescind its acceptance of the site into the VRP, and Courtland subsequently filed a motion pursuant to the All Writs Act, requesting that the court enjoin UCC's

---

[1] Courtland has also brought various state law claims.

participation in the VRP inasmuch as the site's acceptance therein impermissibly interferes with the court's jurisdiction over Courtland's pending citizen suit claims under the CWA, RCRA, and CERCLA and its state law claims.

On November 23, 2021, the court entered a memorandum opinion and order denying Courtland's motion. See ECF 319. In so doing, the court ultimately concluded that the WVDEP's acceptance of the site into the VRP does not usurp the court's jurisdiction over Courtland's claims and thus the requested relief was "neither necessary nor appropriate in aid of the court's jurisdiction over these matters." Id. at 9. Courtland now seeks reconsideration of that memorandum opinion and order contending that the court's decision was in error.

On February 7, 2022, UCC filed its motion seeking the imposition of Rule 11 sanctions against Courtland for the filing of its original motion under the All Writs Act, its reply brief, and its motion to reconsider.[2]  UCC contends the filing of

---

[2] In accord with Rule 11(c)(2), UCC served its motion, along with its accompanying memorandum and exhibits on Courtland's counsel on January 7, 2022, but did not file the same with the court until after the expiration of the applicable 21 day period. See Fed. R. Civ. P. 11(c)(2) (providing a motion for sanctions "must be served under Rule 5, but it must not be filed or presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets").

these motions violates Rule 11(b) inasmuch as (1) the filings were used as "an attempt to embarrass, harass, and threaten WVDEP officials following the agency's refusal to acquiesce to Courtland's demands in its public comment letter," and (2) the factual allegations contained in Courtland's filings "have no evidentiary support nor are they likely to eventually be supported by evidentiary support." ECF 328 at 5.

The court will address Courtland's motion to reconsider before turning to UCC's related motion for Rule 11 sanctions.

## II. Courtland's Motion to Reconsider

A. <u>Governing Standard</u>

"Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case (i.e., interlocutory orders)." <u>Carrero v. Farrelly</u>, 310 F. Supp. 3d 581, 583 (D. Md. 2018). Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time." Fed. R. Civ. P. 54(b). It is unclear what precise

standard governs a motion for reconsideration of an interlocutory order. See Butler v. DirectSAT USA, LLC, 307 F.R.D. 445, 449 (D. Md. 2015).

Nevertheless, "[w]hat is clear, is that such motions 'are not subject to the strict standards applicable to motions for reconsideration of a final judgment.'" Carrero, 310 F. Supp. 3d at 584 (citation omitted). While "there may be many valid reasons to reconsider an order, 'a motion to reconsider is not a license to reargue the merits or present new evidence' that was previously available to the movant." Id. (citations omitted).

B. Discussion

Courtland contends the court erred in denying its motion for injunctive relief under the All Writs Act, 28 U.S.C. § 1651, inasmuch as "the WV VRP, as state law, purports to divest this [c]ourt from the lawful jurisdiction which Congress has expressly granted to it as an integral portion of the Congressionally-designed scheme to secure effective enforcement of its CWA & RCRA enactments, which has been lawfully invoked, and which this [c]ourt is lawfully exercising." ECF 321 at 4 (emphasis in original).

The WV VRP is governed by West Virginia Code § 22-22: the Voluntary Remediation and Redevelopment Act. West Virginia Code § 22-22-18 provides:

> Any person demonstrating compliance with the applicable standards established in section three of this article, whether by remediation or where the site assessment shows that the contamination at the site meets applicable standards, shall be relieved of further liability for the remediation of the site <u>under this chapter</u>. Contamination identified in the remediation agreement submitted to and approved by the division shall not be subject to citizen suits or contribution actions.

W. Va. Code § 22-22-18 (emphasis added). Courtland contends that the emphasized "under this chapter" language includes the entirety of Chapter 22 of the West Virginia Code, including:

> (a) The West Virginia Solid Waste Management Act (W. Va. Code Chapter 22, Article 15), which forms the basis of Count V (Public Nuisance Per Se relative to statutory violations of the Solid Waste Management Act) of Courtland's Complaint in Case 19-cv-00894 now pending before this [c]ourt), and (b) The West Virginia Hazardous Waste Management Act (W. Va. Code Chapter 22, Article 18), which forms the basis of Count II (RCRA Citizen Suit relative to violations of both RCRA and the Hazardous Waste Management Act) of Courtland's Complaint in Case 19-cv-00894 now pending before this court, <u>both</u> of which Counts this [c]ourt is currently exercising jurisdiction.

ECF 321 at 4 (emphasis in original). Courtland further notes that "[i]n this context, it is . . . imperative that this [c]ourt recognize that Plaintiff Courtland's several pending claims before this [c]ourt alleging violations of RCRA Subtitle C (i.e., the Hazardous Waste Management provisions of RCRA)

after 1983 are necessarily brought pursuant to the provisions of the WV Hazardous Waste Management Act . . . which 'became effective pursuant to RCRA' for purposes of RCRA's 'Citizen Suit' provision" inasmuch as "pursuant to RCRA § 3006(b) . . . the W. Va. Hazardous Waste Management Act became effective in WV 'in lieu of the Federal Act' upon its approval by the USEPA in the early 1980s."  Id. at 6.

Courtland further notes that once the site meets the applicable standards and all work has been completed in the VRP agreement or the site assessment shows all applicable standards are being met, a licensed remediation specialist issues to the VRP applicant a final report.  The final report then permits the applicant to seek a "certificate of completion" from the director of the WVDEP.  See W. Va. Code § 22-22-13(a).  Pursuant to W. Va. Code § 22-22-13(c):

> [t]he certificate shall contain a provision relieving
> a person who undertook the remediation and subsequent
> successors and assigns from all liability to the state
> as provided under this article which shall remain
> effective as long as the property complies with the
> applicable standards in effect at the time the
> certificate of completion was issued.

The West Virginia Legislative Rule further provides that the certificate of completion shall provide as follows:

> The applicant and the persons identified in section 18 of the Act (A) are relieved of liability to the State for the release that caused the contamination that was the subject of the voluntary remediation, and the State shall not institute any civil, criminal, or administrative action arising from the release and resulting contamination as long as the site continues to meet applicable standards in effect at the time the Certificate was issued; and (B) shall not be subject to citizen suits or contribution actions with regard to the contamination that was the subject of the Voluntary Remediation Agreement.

W. Va. C.S.R. § 60-3-12.3.b.2.

Relying on these provisions, Courtland asserts that the "WV VRP Administrative Process . . . when applied to a Defendant in a pending, federal 'Citizen Suit' case quite clearly *is* a manifest interference under color of state law with this [c]ourt's jurisdiction over" these actions. ECF 321 at 5-6 (emphasis in original). Courtland also notes that W. Va. Code § 22-22-18 and W. Va. C.S.R. § 60-3-12.3.b.2 "purport to absolve a polluter which participates in the VRP from any and all citizen suit liability or liability actions," which "directly belies this [c]ourt's conclusion that UCC's participation in the VRP 'does not moot citizen-suit claims for civil penalties.'" Id. at 7.

In sum, Courtland avers that as long as UCC can demonstrate compliance at the site with the standards implemented by the WVDEP, it can claim that "it is relieved from some or all liability under Counts II and V pursuant to W. Va. Code § 22-22-18." Id. at 5. Courtland thus requests that the court enter an order pursuant to "the All Writs Act, 28 U.S.C. § 1651, (a) directing UCC to withdraw its improper and illegal WV VRP application, and (b) prohibiting [the] WV DEP, during the pendency of this Litigation, from issuing any administrative orders affecting or concerning [the site] without Leave of this [c]ourt, including those which would purport to authorize or direct any investigatory or remedial activities at or affecting [the site] or which would set any standards uniquely applicable to the [site]." Id. at 7.

UCC responds that Courtland's motion offers "no legitimate basis on which this [c]ourt should reconsider" its previous decision. ECF 324 at 5. UCC notes that while the WV VRP does ultimately provide for liability protections, the statutory language makes clear that such protections do not attach until after the requirements[3] of the VRP are satisfied, --

---

[3] UCC notes that the VRP requirements "include not only a site assessment and the performance of a risk analysis, but also include selecting and implementing a remediation plan." ECF 324 at 6. It further notes that "[t]he program also contemplates long term oversight for sites that require it." Id.

not during participation -- the complete process of which typically takes years. UCC thus contends that any liability protection from which it could potentially benefit "would not be available for years." Id. at 6.

As a threshold matter, the court notes that aside from simply stating that the WVDEP's oversite of the remediation could potentially impede or make more difficult the accomplishment of the eventual remedy selected by the court, Courtland's original briefing is devoid of the specific statutory focused contentions raised herein. In fact, the only part of Courtland's original briefing referencing liability protections is a single sentence in its original reply brief, which states "the principal 'carrot' for entry into the WV VRP is the successful applicant's eventual insulation from liability to the State of West Virginia following a determination that the applicant has completed the prescribed and agreed upon program." ECF 315 at 8.

Nonetheless, had the focus of Courtland's original briefing been the same as the focus here, the ultimate conclusion reached is unchanged. It bears noting that it is somewhat perplexing that Courtland seeks to enjoin UCC's participation in the VRP, the very goal of which is to specifically identify any contamination existing and/or

occurring on the site and implement a plan to ensure adequate remediation of the same under the direction of the WVDEP, when Courtland itself is seeking the immediate investigation and remediation of the site in these actions. Inasmuch as Courtland's claims herein remain unless, in the unlikely event, a certificate of completion would be issued to UCC before the conclusion of these matters, the ongoing VRP process has no effect on the court's jurisdiction. Accordingly, Courtland's motion to reconsider is denied.

### III. UCC's Motion for Rule 11 Sanctions

A. <u>Governing Standard</u>

Federal Rule of Civil Procedure 11 provides that by filing a written motion with the court, the movant's counsel certifies that the motion:

> (1) is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Our court of appeals has stated that "[a]n assertion of law violates Rule 11(b)(2) when, applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." In re Sargent, 136 F.3d 349, 352 (4th Cir. 1998). Merely "asserting a losing position, [however]. . ., is not of itself sanctionable conduct." Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 151 (4th Cir. 2009).

Upon a determination that Rule 11(b) has been violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation," including, if warranted, an "award to the prevailing party [of] the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(1)-(2). Nonetheless, "[c]ourts generally should reserve such sanctions for situations that are akin to a contempt of court order." In re Bees, 562 F.3d 284, 287 (4th Cir. 2009).

B.  <u>Discussion</u>

As previously mentioned, UCC contends that the filing of Courtland's motions pursuant to the All Writs Act violates Rule 11(b) inasmuch as (1) the filings were used as "an attempt to embarrass, harass, and threaten WVDEP officials following the agency's refusal to acquiesce to Courtland's demands in its public comment letter," and (2) the factual allegations contained in Courtland's filings "have no evidentiary support nor are they likely to eventually be supported by evidentiary support."  ECF 328 at 5.  As a result, UCC avers it has incurred attorneys' fees and costs that it would not have otherwise occurred but for Courtland's violation of Rule 11.

Courtland first responds that its filings were not used to threaten WVDEP officials, but to "advise such officers that their compliance with RCRA, its implementing regulations, and the West Virginia Solid Waste Management Act will be compelled pursuant to the provisions of 42 U.S.C. § 6972(a)(1)(A) and applicable State Law."  ECF 340 at 6.  Second, Courtland contends its filings are not frivolous.

Upon an objective inquiry, the court concludes Courtland's motions at issue were not filed with an improper purpose nor were so far-fetched in law and fact to warrant the imposition of Rule 11 sanctions.  Indeed, in order to constitute

13

sanctionable conduct, the legal position taken in the relevant filings must be completely untenable, rather than merely unsuccessful. See Hunter, 281 F.3d at 151. Such is not the case here. Accordingly, UCC's motion for sanctions is denied.[4]

IV. Conclusion

Based upon the foregoing discussion, it is ORDERED that Courtland's motion for reconsideration (ECF Nos. 321, 101, 24) and UCC's motion for Rule 11 sanctions (ECF Nos. 327, 109, 29) be, and hereby are, DENIED.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: April 29, 2022

John T. Copenhaver, Jr.
Senior United States District Judge

---

[4] The court notes that in its response brief, Courtland requests a hearing on UCC's motion for sanctions. Given the aforementioned ruling, however, the court finds a hearing on the issue to be unnecessary. Furthermore, to the extent that Courtland contends sanctions should instead be levied against UCC for the filing of its subject motion, the court likewise concludes the imposition of sanctions to be unwarranted in that circumstance.